In the Matter of SCHENLEY INDUSTRIES, INC., Petitioner, *v.* STATE LIQUOR AUTHORITY, Respondent, and LOUIS J. LEFKOWITZ, ATTORNEY-GENERAL, Intervenor-Respondent.

First Department, April 19, 1966.

*Harry I. Rand* of counsel (*Samuel S. Allan* and *Leonard Lipschutz* with him on the brief; *Weisman, Celler, Allan, Spett & Sheinberg,* attorneys), for petitioner.

*Emanuel D. Black* of counsel (*Hyman Amsel,* attorney), for respondent.

*Charles A. La Torella, Jr.,* of counsel (*Samuel A. Hirshowitz* and *Philip Weinberg* with him on the brief; *Louis J. Lefkowitz, Attorney-General*), for intervenor-respondent.

*Per Curiam.* Respondent State Liquor Authority instituted a proceeding against the petitioner, claiming that petitioner violated section 101 (subd. 1, par. [c]) of the Alcoholic Beverage Control Law and rule 11 of the Rules of the State Liquor Authority (9 NYCRR 86). After a hearing respondent decided that there was such a violation and issued a warning to respondent together with a bond claim for $2,500.

In this review pursuant to article 78 of the CPLR, petitioner claims that the statutory section and the rule promulgated in implementation of it are void as being an unconstitutional delegation of legislative power; that the trial procedure involved a denial of due process; and that the acts complained of do not constitute a violation of either the statute or the rule. We are all in accord that the first two objections are not well taken and that no discussion of the points is warranted. The majority believes that the last claim is well founded and mandates that the decision and order of the respondent be annulled.

Section 101 of the Alcoholic Beverage Control Law makes it unlawful for a manufacturer or wholesaler to make a gift or render any service, directly or indirectly, to any licensee under the statute which may tend to influence such licensee to purchase the manufacturer's product. Rule 11 of the Authority's rules

seeks to define what is a gift or service by enumerating those things that are not so regarded, consisting for the most part of advertising display matter, including such articles as ash trays, bottle stops and the like.

There is no dispute as to the acts performed by petitioner. Late in 1964 petitioner organized a subsidiary called Schenley Charge Plan, Inc., and on November 1, 1964, this company put its plan into operation. The plan was generally similar to the pattern of commercial credit charge plans, with certain significant differences. The points of similarity were that credit cards were issued. Holders of these cards could make purchases on credit at restaurants which had previously agreed to recognize them. These restaurants billed Schenley Charge Plan, Inc. for the sales so made. This company paid the charges and, in turn, billed the card holders. The points of difference are that cards were not issued to the public generally but only to officers and employees who were on a management level and had expense accounts of the petitioner, and to officers and employees of similar grade of petitioner's suppliers and advertising agencies. There was no general solicitation of restaurants to accept these credit cards. Prospective card holders were asked for the names of restaurants which they usually patronized and from this a list was made up. It was pointed out to each restaurant contacted that this was not a promotional scheme to increase sales and, in fact, at least one restaurant on this list did not serve liquor at all. No charge was made to the restaurants in connection with this activity. The expenses were borne by petitioner.

It is apparent that it is respondent's own interpretation of the statute that not all gifts or services are inhibited by it. The list of exceptions in rule 11 makes this clear. By sanctioning these the Authority must have concluded that certain gifts or services do not improperly tend to influence licensees to purchase the products of the manufacturer or wholesaler. For instance, the rule permits the distributor to clear the beer service pipes of a customer when an emergency arises from their becoming clogged. Advertising material which also serves to embellish or decorate the licensee's establishment may be the subject of gift, as well as small articles used in the dispensing of drinks or for the convenience of the licensee's customers. The interpretation must be that the statute does not interdict services or gifts which are either customary or de minimis.

Applying that to the situation presented, it is seen that, while the service rendered is material, it primarily benefits petitioner's own staff and related personnel. It is not supplied to restau-

rants generally but only to those already patronized by these people. It was established in the proof that the restaurant trade favors the activity of commercial credit arrangements generally called diners' clubs because it accredits the particular restaurant-participant and increases the latter's business. It is for this service that restaurants enrolled with commercial enterprises pay. Petitioner's venture here had neither of these aspects. There was no advertising which drew patrons to the participating restaurants, and the selection of the same was limited to institutions which already enjoyed the patronage of the persons who would use the cards. Nor can it be claimed that any material advantage was obtained by the fact that dinner checks were paid subsequently by petitioner instead of by the customers themselves. The fact that the restaurants enrolled in petitioner's venture paid nothing is not significant. They received nothing of any moment.

It is argued that whether or not this enterprise represented a service which would tend to influence licensees to purchase petitioner's products is a question within the respondent's competence to decide. So it is, provided there is any proof to support the conclusion. The record is barren of any proof short of the nature of the activity itself. Whatever else there is in the record supports a conclusion directly contrary to that reached by the Authority. It follows that there is no substantial evidence to warrant the determination.

Determination of the respondent State Liquor Authority should be annulled on the law, with costs and disbursements to petitioner.

EAGER, J. (dissenting). I would confirm the determination of the State Liquor Authority.

The statute expressly provides that it shall be unlawful for any manufacturer or wholesaler of liquors to "render any service of any kind whatsoever, directly or indirectly, to any person licensed under this chapter [Alcoholic Beverage Control Law] which in the judgment of the liquor authority may tend to influence such licensee to purchase the product of such manufacturer or wholesaler." (Alcoholic Beverage Control Law, § 101, subd. 1, par. [c]). The "judgment" in a given case as to whether a particular "service" rendered by a manufacturer or wholesaler to a retail licensee has a tendency to influence the latter to purchase the products of the former is one for the Authority to make. Here, the judgment of the Authority was an informed judgment, and the court has no right to substitute its judgment in place thereof; and where there is a rational basis

for the determination of the Authority and the determination is supported by substantial evidence, it may not be annulled. (See 1 N. Y. Jur., Administrative Law, §§ 181–185.)

The hearing officer, on the basis of evidence produced before him, found that the Schenley Charge Plan was instituted by petitioner (Schenley) " as a good will gesture and to spread the name of Schenley throughout the restaurant industry ". The plan contemplates the issuance of credit cards to Schenley employees and to employees and representatives of affiliated companies, vendors, suppliers, public relations firms, advertising agencies, newspapers and periodicals having business relations with Schenley. Of the nearly 1,000 credit cards already issued, more than two thirds of them are held by persons who are employees of third persons doing business with Schenley. It is a reasonable inference, as argued by respondent, that eventually the credit card holders will number at least 3,000, the greatest number of whom will not be employed directly by Schenley.

The Schenley credit card holders will be inclined to patronize the places of business of those restaurant licensees who will extend credit to them without question. The credit card holders using the business facilities of such licensees will generally be accompanied by members of their families, their friends or business guests; and participating licensees should substantially benefit from the patronage. Furthermore, inasmuch as such licensees actually receive a guarantee of full payment of the charges incurred by the credit card holders, they are enabled to extend credit to such holders without the necessity of incurring the expense incident to credit investigations and collection of accounts. One licensee testified that he welcomed the plan because it relieved him of the necessity and expense of furnishing photocopies of accounts required for tax purposes; instead of separate billing to the individual customer, the plan permitted a consolidation into one convenient operation.

One of the special benefits to the participating restaurant of this Schenley credit card plan is that it is cost-free. Many restaurants are agreeable to and pay charges of from 5% to 7% of the bills for the privilege of servicing the customers of other credit card plans. But, under the Schenley plan, its subsidiary services the accounts, collecting the bills of the restaurant customers and remitting to the restaurants, without any charge to them.

Also, the credit card holders themselves, benefitted by Schenley's courtesy in the issuance of cards to them, will be inclined

to favor Schenley products in their patronage of participating establishments. This in turn could very well generally increase the demand for and popularity of such products in such establishments with the result that they will be under "influence * * * to purchase the product" of Schenley.

It is only natural for one who is benefitted by any free service to feel under obligation to his benefactor. It is an old adage that one hand is expected to wash the other. A participating licensee, who has profited substantially from the Schenley charge plan accounts, would be inclined to favor Schenley products in the ordering and selling of liquors. It is unrealistic to believe that a restaurant licensee, in response to favorable treatment by a particular manufacturer or wholesaler, will not and cannot accelerate the sale of its products.

Certainly, the proofs before the Authority and reasonable inferences therefrom furnish adequate support for a finding that the Schenley credit card plan does furnish a beneficial service to the participating restaurant licensees; and there is abundant basis for the conclusion of the Authority that the service "tended to influence such retail licensees to purchase the products of the distiller licensee" [Schenley].

In the interest of public health, safety and welfare, the Legislature has wisely vested the State Liquor Authority with broad discretion in the matter of the regulation of the conduct of manufacturers, wholesalers and other licensees in their dealings in intoxicating liquors. (See Alcoholic Beverage Control Law, §§ 10–17; 2 N. Y. Jur., Alcoholic Beverages, § 4, p. 518.) It is well settled that the court should not disturb the exercise of administrative discretion conferred upon the Authority unless the action complained of is shown to be arbitrary, capricious or unreasonable. Where, as here, there is a rational basis for a particular determination of the Authority in furtherance of its regulatory discretion, the court should not take upon itself the prerogatives of the Authority and set aside the determination.

RABIN, J. P., STEVENS and STEUER, JJ., concur in *Per Curiam* opinion; EAGER, J., dissents in opinion in which BASTOW, J., concurs.

Determination of the respondent State Liquor Authority annulled on the law, with $50 costs and disbursements to petitioner.